IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ALWYN LUCKEY                                                                PLAINTIFF

V.                                                           CIVIL ACTION NO. 1:05CV89-JAD

RICHARD F. SCRUGGS, P. A., ET AL                                          DEFENDANTS

**MEMORANDUM OPINION**

This case was tried before the undersigned from June 6 through June 17, 2005, with the consent of the parties pursuant to 28 U. S. C. § 636 (c)(1). The following is the court's findings of fact and conclusions of law. [1]

<u>Findings of Fact and Conclusions of Law</u>

Plaintiff Alwyn H. Luckey, a 1985 graduate of the University of Mississippi School of Law, was employed by Richard F. Scruggs, P. A., in Pascagoula as an associate that summer. After doing mostly bankruptcy work initially Luckey was approached by Scruggs about doing asbestos work. Luckey was aware the Scruggs had a relationship with attorney William Roberts Wilson concerning asbestos litigation and had observed that Scruggs, P. A., shared office space with the persons handling asbestos work although each entity had a store front. Luckey accepted the offer and began work on the asbestos litigation. About this time Scruggs and Wilson formalized their relationship

---

[1] The court is aware that the parties' Agreement for Resolution of Cases provides that the entry of a written opinion is discretionary. However, the court is of the opinion that the parties and the public are entitled to know the basis for the court's decision. Because of the time that has elapsed in this litigation and the desire of the parties to have a decision, the court will issue its findings in an abbreviated fashion without a lengthy discussion of all the evidence considered. The court has considered all the evidence, but, as the findings show, determined what portion of the evidence is most believable.

-1-

by the formation of Asbestos Group, P. A., a professional corporation with each of them retaining 50% of the stock. Luckey became an employee of Asbestos Group, P. A., in the fall of 1985, earning $21,000 per year, which was an increase from the $18,000 per year he earned with Scruggs, P. A. Luckey received his paycheck and his W-2's from Asbestos Group, P. A. In this same time frame the offices of Asbestos Group, P. A., were moved about a block away because they had outgrown their space. Luckey maintained an office in Scruggs, P. A., but spent a great deal of his time in the asbestos office.

Asbestos Group, P. A., began to attract a large number of people alleging injuries due to asbestos exposure. This was due, in large part, because Asbestos Group, P. A., would pay for the medical examinations of the claimants while other lawyers on the coast would only take clients willing to pay for their own examinations. All the expenses of Asbestos Group, P. A., were shared 50-50 between Scruggs and Wilson. The ongoing expenses were being paid by settlements from asbestos defendants such as Combustion Engineering. Initially, contracts with clients were with Asbestos Group, P. A. However, this practice ended when advised by another lawyer that there might be a problem practicing law under a trade name. Accordingly, clients signed a contract with either Scruggs, P. A., or Wilson, P. A., the principal's individual law firms, but the cases were processed by Asbestos Group, P. A. Once accepted as a client, the individual was put on a list for a medical examination. Because of the volume it became increasingly difficult to get individuals seen for medical tests. Therefore, the clients were scheduled for appropriate tests and the results were forwarded to Dr. Reuben in Dallas, as well as others, for interpretation. A written report of diagnosis, if any, would be returned by the retained doctor.

Luckey was the main attorney who handled the processing of claims and settlements, although Scruggs assisted with the medicals and Wilson with the more "traditional lawyer stuff." In 1988 Luckey was given 5% of the stock in Asbestos Group, P. A., with 47.5% being retained by Scruggs and Wilson. In the summer of 1990 Luckey's share was increased to 15% retroactive to January 1. Since Wilson had moved his private law practice to Jackson and Scruggs remained on the coast managing the day-to-day activities of Asbestos Group, P. A., Scruggs retained 45% of the stock and Wilson retained 40%. Pursuant to the agreement of the principals in 1990, Scruggs and Wilson began to take individual asbestos cases in their individual firms and not as a part of the Asbestos Group, P. A. [2]

By the early 90's Asbestos Group, P. A., had over 3000 cases. During this time the relationship between Scruggs and Wilson, which had never been good, worsened. Wilson eventually agreed to a buyout which resulted in a written agreement dated August 7, 1992. Exhibit D-16. As a result of this agreement Luckey's ownership interest in Asbestos Group, P. A., increased to 25% and Scruggs retained 75%. Wilson was to be paid future fees based on a formula set forth in the agreement. After payments to Wilson, the remaining fees were the property of Asbestos Group, P. A., subject to division between Scruggs and Luckey based on their percentage of stock ownership. This arrangement continued unaltered until the summer of 1993. Scruggs had also agreed with Luckey that he would pay him 35% of the fees earned in the asbestos cases maintained in Scruggs, P. A., through agreements with other attorneys for his assistance in these cases. As noted earlier, these cases did not fall within the purview of Asbestos Group, P. A. Luckey's payment for

---

[2] For example, Scruggs entered agreements with several attorneys to assist in their cases on a 65-35 basis. The monies obtained through these cases were not included in the income of Asbestos Group, P. A., but were reflected on the books of Scruggs, P. A.

these fees was from Scruggs, P. A., and the yearly amounts were reflected on 1099's.

Asbestos Group, P. A., along with Ness Motley, an associated law firm from South Carolina acting as lead counsel, began the trial of a large consolidated case, known as the Abrams case, in the spring of 1993. Numerous defendants settled either prior to, or during, trial which increased the settlement proceeds coming to Asbestos Group, P. A. The plaintiffs in Abrams rested in mid-June, 1993. Shortly thereafter the events that led to Luckey's termination and this lawsuit occurred. Without belaboring these events, Luckey was called to meet Scruggs at the LaFont Inn in Pascagoula and was advised that he was terminated based on information that Luckey had attempted to have the dates on certain medical records changed by Asbestos Group, P. A., staff who refused to do so and reported their concerns over Luckey's request to Scruggs. The court finds, and notes that the plaintiff does not challenge, that Scruggs had adequate grounds to terminate his employment. The question before the court is the effect of the termination on the various relationships between Luckey and Scruggs and whether Luckey is owed any fees after the date of his termination. It should be noted that the court directed a verdict for the defendants on the claim to monies from the tobacco fees based on a constructive trust theory. Accordingly, that aspect of the case will not be discussed further and the court stands on its oral opinion. Moreover, plaintiff conceded the RICO count at trial and that count will not be discussed.

### Asbestos Group, P. A.

There is no question that at the time of his termination Luckey was a 25% shareholder in Asbestos Group, P. A., and that the professional corporation has never been dissolved. Does Luckey's misconduct terminate his ownership in Asbestos Group, P. A.? The court finds that it does not. *Bolstein v. Gimpel, 125 Misc. 2d 45, 477 N.Y.S. 2d 1014 (S. Ct. N.Y. 1984)*. Luckey is

owed 25% of all the fees received by Asbestos Group, P. A., from the date of his termination to the present. The court further finds that Asbestos Group, P. A., was absorbed by successive professional corporations of Scruggs which has complicated both the discovery in this case and the computation of the money owed to Luckey. As the majority stockholder Scruggs owed a fiduciary duty to Luckey and the corporation to maintain the records of the corporation and to pay Luckey his share in a timely share. *Retzer v. Retzer, 578 So.2d 580 (Miss. 1991).* The court specifically finds that Scruggs' position concerning Luckey's status within Asbestos Group, P. A., to be unreasonable and in conflict with existing law. Clearly, the cases pending at the time of Luckey's termination were assets of Asbestos Group, P. A., and Luckey was entitled to his share of the fees generated by these assets. See, e.g., *Santalucia v. Sebright Transportation, Inc., 232 F.3d 293, 299 (2d Cir. 2000).* Defendants' arguments to the contrary are simply without merit. The court finds that the refusal to pay Luckey's fees from Asbestos Group, P. A., was frivolous and there was a breach of fiduciary duty entitling plaintiff to prejudgment interest on the monies due him from Asbestos Group, P. A. See, *Estate of Van Williams Ryan v. McMurtray, 505 So.2d 215, 219 (Miss 1987).* Scruggs recalcitrance and litigation conduct entitles Luckey to further damages in the form of attorneys' fees and expenses. *Aqua-Culture Technologies, LTD., et al v. Holly, 677 So. 2d 171 (Miss. 1996); Universal Life Insurance Co. v. Veasley, 610 So.2d 290, 295 (Miss. 1992); Miss. Code Ann. § 11-55-5.* While the court's findings in this regard could support an award of punitive damages, the court finds that the award of attorneys' fees and expenses is sufficient. This remedy makes the plaintiff whole which is the just result of any litigation in which the plaintiff prevails.[3]

---

[3] Luckey is also entitled to fees from the occupational hearing loss (OHL) and the hand, arm vibration (HAVS) cases which were part of Asbestos Group, P. A. Those amounts through December, 2000, have been included in the court's calculations. The court recognizes

### Luckey's Status re Cases Maintained by Asbestos Group, P. A.

As was noted previously, Scruggs and Luckey had agreed that Luckey would receive 35% of the fees generated from the joint ventures Scruggs had made with other asbestos attorneys. The court finds that Luckey was not a joint venturer with Scruggs, but was a limited agent and employee of Scruggs. See, generally, *Shanklin v. Allis-Chalmer Mfg. Co., 254 F. Supp 223, 225-26 (S. D. W. Va. 1966)*. Luckey's relationship with Scruggs in this regard was terminable at the will of either Scruggs or Luckey. See, *Clark v. Ritchey, 759 S0.2d 516, 518 (Miss. Ct. App. 2000)*. Accordingly, Luckey's dismissal for misconduct terminated his rights to any fees from this group of cases.

### Calculation of Damages

The calculation of damages due Luckey from Asbestos Group, P. A., has been made more difficult by the absorption of the Group by various Scruggs' entities in subsequent years. The court finds that the calculations of Dr. Dennis re Asbestos Group, P. A., to be the most accurate. The court also finds that Dr. Dennis' calculation of overhead based on the historical overhead and the cost of living index for the years 1994 through 1999 to be the most accurate and were utilized by the court in its calculations. Accordingly, the court finds the amounts due plaintiff from Asbestos Group, P. A., as set forth in Attachment "A". As can be noted from the chart, the court included the amount due Luckey from RFS, P. A., on the date of termination, but included as receipts the $115,000.00 paid to Luckey by Scruggs after termination. The court also included the amount of $42,455.27 as Luckey's share of the hard assets of Asbestos Group, P. A., in 1994. Based on these calculations the

---

that the final amount associated with the December, 2004, settlement of $17.75 million can not be accurately calculated at this time and may result in no fees to the attorneys. Luckey shall be paid his percentage of these fees upon the conclusion of the cases and the dispersal of fees, if any.

court finds that judgment shall be entered in the amount of $13, 688, 907.92 with interest at the rate of 3.59% per annum until paid. The plaintiff shall also recover his attorneys' fees and expenses related to the recovery of this judgment. The parties are urged to negotiate this figure bearing in mind that the court will not approve amounts related to claims that did not prevail. If the parties can not agree to a figure, the plaintiff shall submit his itemization of fees and expenses within 21 days of this order. Defendant shall respond 10 days thereafter.

This 20th day of July, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

| | OHL/HAVS | ASBESTOS SETTLEMENTS | ASBESTOS OVERHEAD | RFS PA | LUCKEY RECEIPTS | AG assets 25.00% | YEARLY TOTAL | INTEREST | TOTAL W/ INTEREST |
|---|---|---|---|---|---|---|---|---|---|
| Dec 1993 | | | -$356,849.00 | $303,359.27 | -$589,809.00 | | $201,241.27 | | $201,241.27 |
| Dec 1994 | | $844,540.00 | -$153,321.00 | | | $42,445.77 | $713,742.77 | $16,099.30 | $931,083.34 |
| Dec 1995 | $238,420.00 | $824,618.00 | -$155,232.00 | | | | $1,428,293.00 | $74,486.67 | $2,433,863.01 |
| Dec 1996 | $125.00 | $1,345,105.00 | -$163,646.00 | | | | $2,040,010.00 | $194,709.04 | $4,668,582.05 |
| Dec 1997 | $93,704.00 | $2,203,531.00 | -$166,221.00 | | | | $836,204.00 | $373,486.56 | $5,878,272.62 |
| Dec 1998 | $50,167.00 | $908,721.00 | -$106,026.00 | | | | $887,725.00 | $470,261.81 | $7,236,259.43 |
| Dec 1999 | $49,862.00 | $943,584.00 | -$144,481.00 | | | | $315,323.00 | $578,900.75 | $8,130,483.18 |
| Dec 2000 | $13,392.00 | $409,942.00 | -$49,608.00 | | | | $152,268.00 | $650,438.65 | $8,933,189.83 |
| Dec 2001 | | $188,484.00 | | | | | $152,476.00 | $714,655.19 | $9,800,321.02 |
| Dec 2002 | | $152,476.00 | | | | | $106,054.00 | $784,025.68 | $10,690,400.70 |
| Dec 2003 | | $106,054.00 | | | | | $594,453.00 | $855,232.06 | $12,140,085.76 |
| Dec 2004 | | $594,453.00 | | | | | $0.00 | $971,206.86 | $13,111,292.62 |
| July 20, 2005 | | | | | | | $0.00 | $577,615.30 | $13,688,907.92 |
| | $445,670.00 | $8,521,508.00 | -$1,295,384.00 | $303,359.27 | -$589,809.00 | $42,445.77 | $7,427,790.04 | | $13,688,907.92 |

ATTACHMENT A